Filed 12/27/22  R.F. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| R.F.,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>        Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Real Party in Interest. | F085170<br><br>(Super. Ct. Nos. 20CEJ300388-3, 20CEJ300388-4, 20CEJ300388-5)<br><br><br>**OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Elizabeth Egan, Judge.

R.F., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Carlie M. Flaugher, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]        Before Franson, Acting P. J., Peña, J. and DeSantos, J.

R.F. (mother) seeks an extraordinary writ, in propria persona, from the juvenile court's orders issued at a contested 18-month review hearing (Welf. & Inst. Code, § 366.22)[1] terminating her reunification services and setting a section 366.26 hearing for January 30, 2023, as to her now nine- and six-year-old daughters, A.G. and M.G. respectively, and her five-year-old son, E.G. Mother contends the reunification services provided by the Fresno County Department of Social Services (department) were not reasonable and that the court erred in not continuing services beyond the 18-month review hearing. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

*Detention*

In December 2020, the department received a referral regarding general neglect of mother's then 15-year-old son, H.G., 13-year-old daughter, I.G., seven- and four-year-old daughters, A.G. and M.G. respectively, and three-year-old son, E.G. Edgar V. is the father of A.G., M.G. and E.G. H.C. is the father of H.G. and I.G.

The referral was generated when I.G. disclosed that Edgar rubbed her shoulders and thighs and asked her to kiss him. The sexual abuse happened while mother was in Mexico for approximately a year and I.G. and her siblings were left in Edgar's care. She did not tell mother about the abuse, fearing mother would not believe her. She said Edgar behaved the same way toward her adult sibling. Mother denied knowing about Edgar's inappropriate behavior with her adult daughter and I.G. However, she recalled an incident that occurred a few months before in which Edgar asked I.G. about having sex. She did not report it to the police because she did not believe anything could be done. Instead, she tried to force Edgar to leave the home but he refused and threatened to call the police on her or kick her out of the home.

---

[1] Statutory references are to the Welfare and Institutions Code.

2.

I.G. provided law enforcement additional details about the sexual abuse. She said Edgar entered her room and asked her for sex, made her watch pornography and coerced her into touching his penis. Edgar admitted to law enforcement that he requested sexual favors from I.G. and knew it was wrong. The police placed a protective hold on the children and the department placed them in foster care.

The juvenile court ordered the children detained pursuant to an original dependency petition, alleging Edgar sexually abused I.G. and mother failed to protect I.G. from being sexually abused by Edgar, thus placing all the children at risk of being sexually abused. (§ 300, subds. (b) & (d).) The court ordered reasonable supervised visits for mother and the children and offered mother parenting classes, mental health and domestic violence evaluations and recommended treatment. A jurisdiction/disposition hearing was set for January 20, 2021.

*Jurisdiction/Disposition*

On December 17, 2020, Edgar reported he was living in Mexico and had no intention of returning to the United States or participating in reunification services. Several days later, H.C. requested placement of his children. He was living with his sister in Madera.

The jurisdiction/disposition hearing was continued and conducted on February 24, 2021. H.C. appeared with counsel. The juvenile court found Edgar's whereabouts were unknown, sustained the allegations and ordered mother and H.C. to participate in parenting classes and mental health and domestic violence evaluations and recommended treatment. The court denied Edgar reunification services because his whereabouts were unknown (§ 361.5, subd. (b)(1)) and set the six-month review hearing for August 11, 2021.

*Reunification Efforts*

By the six-month review hearing, mother and H.C. were making sufficient progress that the juvenile court continued reunification efforts to the 12-month review

hearing set for February 2, 2022. Mother completed her parenting classes and was having overnight weekend visits with the children, which went well. However, the department believed she had yet to demonstrate the children could be safely returned to her.

On August 24, 2021, the department filed a modification petition (§ 388), asking the juvenile court to order supervised visits for mother and the children because E.G. and M.G. reported that Edgar spent the night at mother's home. They also disclosed that Edgar smacked I.G.'s hand because she was using her phone. Mother intervened and told Edgar not to punish I.G.

The juvenile court set a hearing on the department's section 388 petition for October 18, 2021, and reinstated supervised visits for mother pending an investigation. I.G. and H.G. denied that Edgar was in mother's home when questioned by the investigator. M.G. did not remember Edgar being at mother's home recently. The last time she saw him, he brought her presents. E.G. stated, " 'policia (police)' " when asked about the last time he saw Edgar. Asked whether the weather at that time was hot or cold, he first said it was cold but then said it was hot.

The juvenile court denied the department's section 388 petition at the hearing on October 18, 2021.

Mother continued to make progress in her services plan. She completed mental health treatment and 42 sessions of her child abuse intervention program. The department remained concerned, however, that Edgar was in her home during visits with the children. Additionally, E.G. and M.G. displayed sexualized behavior and inappropriate forms of affection with each other in their foster home. In October 2021, H.C. was approved for liberal visits with H.G. and I.G., who enjoyed visiting him but wanted to return to mother's custody.

On February 2, 2022, the juvenile court continued mother's reunification services to the 18-month review hearing which the court set for June 8, 2022, and then continued to July 13, 2022.

Meanwhile, on March 18, 2022, the department filed a modification petition (§ 388), asking the juvenile court to reinstate supervised visits for mother after E.G. disclosed that mother hit him in the face with a hanger during a weekend visit. She hit him because he was not cleaning as he had been instructed. He also said Edgar lived in the home with the family. A hearing was set on the petition for May 11, 2022.

On June 8, 2022, the department filed a subsequent petition (§ 342), alleging mother inflicted serious physical harm on E.G. and M.G. through the use of objects and her hands, despite having received child abuse intervention services. Specifically, it alleged E.G. sustained an injury to his right eye on or about February 28, 2022, for which mother had no reasonable explanation.

The juvenile court ordered the children detained pursuant to the subsequent petition, confirmed the 18-month review hearing for July 13, 2022, and set the jurisdiction/disposition hearing on the subsequent petition for the same date. The hearing was continued and conducted as a contested hearing on October 17, 2022.

*Eighteen-month review hearing*

By the 18-month review hearing, mother had completed her court-ordered services. H.C. completed all of his services, except the child abuse intervention treatment program, which he was scheduled to complete in September 2022. The department did not believe the children could be safely returned to mother's custody and recommended the court terminate her services and set a section 366.26 hearing. The department believed, however, it was in H.G. and I.G.'s best interests to be returned to H.C.'s care and recommended the juvenile court place them with him with family maintenance services.

Mother testified E.G. had injuries on his face when he arrived at her house on February 25, 2022. She contacted the social worker and the caregiver. The caregiver said E.G. was injured at school. She denied that she hit him with a hanger. On cross-examination, mother testified she did not understand why E.G. stated she hit him with a hanger. She believed he was lying. He had lied about her physically abusing him in the past.

Mother's attorney argued the allegation she physically abused E.G. was false. In addition, she completed her reunification services. Therefore, her attorney argued the juvenile court should continue her reunification services to the 24-month review hearing.

The juvenile court sustained the allegations in the subsequent petition and terminated mother's reunification services. The court found it would be detrimental to return the children to mother's custody and that the department provided her reasonable reunification services. The court found there was no legal basis for continuing reunification services beyond 18 months, noting mother had not demonstrated a change in her behavior and additional time was unlikely to result in reunification. The court set a section 366.26 hearing as to A.G., M.G. and E.G., denied Edgar reunification services and ordered family maintenance services for H.C. with his children, H.G. and I.G.

**DISCUSSION**

Mother contends the juvenile court erred in terminating her reunification services because the services provided by the department were not reasonable and exceptional circumstances warranted continuation of her services beyond the 18-month review hearing. We disagree.

*Continuation of Reunification Services beyond 18 Months*

The 18-month review hearing generally marks the maximum allowable period of reunification services afforded a parent under the dependency statutes. (§ 361.5, subd. (a)(3)(A).) At that hearing, the juvenile court is required to return the dependent child to parental custody unless the court finds by a preponderance of the evidence that

the return of the child would create a substantial risk of detriment to the child's safety, protection, or physical or emotional well-being. (§ 366.22, subd. (a)(1).) A parent's failure to participate regularly and make substantive progress in court-ordered treatment programs is prima facie evidence that return would be detrimental. (*Ibid*.) Technical compliance with court-ordered services, though significant, is not conclusive evidence a parent does not pose a risk of detriment to his or her child. It simply means there was not prima facie evidence of detriment. The court must still consider whether the parent eliminated the conditions leading to the child's removal and whether the child would be safe in parental custody. (See, e.g., *In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1141–1142.)

If the juvenile court finds, as it did here, that it would be detrimental to return the child to parental custody, it must set a hearing under section 366.26 to select a permanent plan. (§ 366.22, subd. (a)(3).) Section 366.22, subdivision (b) provides exceptions, none of which apply here, that permit the court to continue services. Those exceptions pertain to parents who are residents of a court-ordered substance abuse treatment program; or recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland Security; or who were a minor or nonminor dependent parent at the time of the initial hearing. The court must also find the parent is making significant and consistent progress, there is a substantial probability the child will be returned, and that it is in the child's best interest to continue services to the parent. The court may continue services up to 24 months from the date the child was initially removed from parental custody. (§ 366.22, subd. (b).)

A juvenile court may also extend the 18-month maximum for reunification efforts under very limited circumstances, such as when: no reunification plan was ever developed for the parent (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777); the court finds reasonable services were not offered (*In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1211); or the best interests of the child would be served by a continuance (see § 352) of

an 18-month review hearing (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1798–1799 (*Elizabeth R.*).

*Application*

As a preliminary matter, although mother asserts the services that she received were not reasonable, she fails to identify the services she claims were unreasonable and explain how they were not reasonable. When an appellant asserts an issue but fails to support it with reasoned argument and citations to authority, as occurred here, we treat the contention as waived. (*People v. Johnson & Johnson* (2022) 77 Cal.App.5th 295, 324.) However, even assuming the issue was not waived, substantial evidence supports the juvenile court's reasonable services finding. Mother was provided multiple services to assist her in being a protective parent, such as parenting classes and child abuse intervention treatment. Yet, she was unable to put into practice what she had learned. Consequently, the evidence supports a conclusion the services mother received were appropriate for her needs; she simply did not benefit from them. Therefore, failure to provide mother reasonable reunification services does not justify extending services beyond the 18-month review hearing.

Nevertheless, mother contends, relying on *Elizabeth R.*, *supra*, 35 Cal.App.4th 1774, that the juvenile court abused its discretion in declining to extend her reunification services beyond 18 months because she completed her court-ordered services. *Elizabeth R.* is distinguishable on its facts. There, the mother spent all but five months of the 18-month reunification period hospitalized for mental health issues, which limited her ability to participate in reunification services. (*Id*. at p. 1777.) Nevertheless, by the time of the 18-month review hearing, the mother had substantially complied with her case plan and had insisted on visitation as much as possible. (*Id*. at p. 1792.) Believing that its only choice at the 18-month review hearing was to either return the children to the mother's custody or terminate reunification services and order a section 366.26 hearing, the juvenile court terminated reunification services. (*Id*. at p. 1789.) The appellate court

disagreed, concluding that the juvenile court had discretion to continue reunification services beyond the 18-month date in rare instances in which the best interest of the child would be served by a continuance. (*Id*. at pp. 1798–1799.)

*Elizabeth R.* is readily distinguishable because the issue addressed was whether the juvenile court was compelled by law to terminate reunification services and order a section 366.26 hearing for a parent who had special needs because of mental illness but who nevertheless substantially complied with the reunification plan or whether the court had discretion to continue reunification efforts. (*Elizabeth R.*, *supra*, 35 Cal.App.4th at p. 1787.) The court concluded the juvenile court has discretion, although limited, to extend the reunification period in the case of a special needs family. (*Id*. at pp. 1795–1796.)

Mother and her family do not present the kind of special needs that would justify a continuation of reunification efforts under *Elizabeth R.* Further, when the juvenile court terminated mother's services in October 2022, she had received 22 months of reunification services. Having rightly concluded exceptional circumstances did not exist to justify continuing reunification efforts, the court had no choice but to set a section 366.26 hearing. We find no error.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).

9.